FILED
2021 Aug-25  PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**LISHA KEITH,**
    **Plaintiff,**

**v.**

**GADSDEN REGIONAL
PHYSICIAN GROUP PRACTICE,
LLC D/B/A ETOWAH PRACTICE
MEDICAL CENTER.,**
    **Defendant.**

**Case No. 4:19-cv-01878-CLM**

## <u>MEMORANDUM OPINION</u>

Gadsden Regional Physician Group Practice, LLC d/b/a Etowah Family Practice Medical Center ("the Clinic") interviewed Lisha Keith for an open position. The Clinic did not hire Keith.

Keith sues the Clinic, alleging that the Clinic did not hire her because of her race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The Clinic says that it did not hire Keith because she did not perform well in her interview, expected too high of a salary, and had less relevant experience than the candidate the Clinic did hire.

As explained within, Keith has failed to meet her burden of establishing that the Clinic's reasons for not hiring her were pretextual. So the court **grants** the Clinic's motion for summary judgment (doc. 24).

## STATEMENT OF THE FACTS

Keith's Application: The Clinic is a healthcare provider in Gadsden, Alabama. Keith is a black woman who applied for a position with the Clinic in November 2017, believing it to be for a Certified Medical Assistant (CMA). The Clinic describes the position as a "front desk receptionist with a CMA certification." Doc. 26, ¶ 10. That said, the Clinic attached as an exhibit to its motion for summary judgment a copy of the job posting as it first appeared on Taleo, its internal job posting website (Keith applied to the posting on Indeed). Doc. 25-1, p. 77. The post describes the position only as "Certified Medical Assistant – Etowah Family Practice – Full Time." *Id.* The first line of the description is "[a]ssists in examination and treatment of patients, measures vital signs […], and records information on patients' charts." *Id.* The description doesn't include the phrase "front desk" or "receptionist," though it does say the position "[p]erforms a variety of tasks." *Id.* The Clinic states that, because it is a small office, employees have various duties, which is why the position required CMA certification despite being mainly a receptionist role.

Keith's Interview: Shortly after applying, Keith interviewed with the Clinic for the position. The parties thoroughly dispute what happened at this point. Keith says that, when Marie McGinnis—the Clinic's former office manager—entered the lobby to call Keith in for her interview, McGinnis "paused as if she was surprised [Keith] was African American." Doc. 3, ¶ 10. Keith also says McGinnis asked about

Keith's age, told her that the position was for a front desk receptionist, and never mentioned any potential CMA duties. McGinnis did not ask to see Keith's CMA certification, resume, or transcript, all of which Keith says McGinnis had asked her to bring to the interview. After about five minutes, McGinnis thanked Keith, told her that the Clinic would keep her application on file in case a CMA position did open up, and escorted her out.

The Clinic recalls it differently. The Clinic denies that McGinnis acted surprised when she first saw Keith and denies that McGinnis asked about Keith's children.[1] Instead, McGinnis testified that Keith simply did not perform well during her interview. She stated that Keith did not have the interpersonal skills needed for a receptionist, had pay expectations that were too high, and had less-relevant experience than the candidate the Clinic did hire. Though Keith had worked as a medical assistant before, she had been a medical insurance claim specialist just before the interview and had only had CMA certification for one month. McGinnis also claims that when she told Keith about the job duties and salary and asked if Keith would be satisfied, Keith responded, "maybe" (Keith denies she said this and that McGinnis ever discussed the job duties or asked about her experience). Doc. 26, ¶ 20. So, the Clinic says, it decided not to hire Keith, and the decision had nothing to do with race.

---

[1] Both parties acknowledge that McGinnis spoke to Keith over the phone several times before the interview.

The Clinic instead hired Judy Clowdus-Huntington, a white woman of American Indian/Alaskan Native descent who had worked for the Clinic before and left a good impression on McGinnis.

The Second Job Posting: About a month after the Clinic filled this position, it posted another opening online, this time for a CMA without receptionist duties. Keith did not apply, and the Clinic ultimately hired Dalana Abercrombie, a black woman, for the position. In April 2018, after this second position opened but before the Clinic hired Ms. Abercrombie, Keith filed a charge with the EEOC alleging discrimination based on race and age.

The Clinic's EEOC Statements: The Clinic provided several statements to the EEOC that the EEOC construed as contradictory. First, the Clinic told the EEOC that it had hired Clowdus-Huntington for the position for which Keith had applied. Later, the Clinic responded to a different question posed by the EEOC by saying that the Clinic hired Abercrombie for a CMA position. Though the EEOC's email is not attached as evidence, it appears that the EEOC meant to ask the Clinic about who it had hired for the first receptionist/CMA position (how clearly the EEOC phrased this question is itself unclear). But the Clinic interpreted this question as referring to the second, non-receptionist CMA position—which, in the Clinic's view, was the only CMA position it posted. So the Clinic told the EEOC that Abercrombie got the job.

Based on this (somewhat confusing) back-and-forth, the EEOC stated in its determination letter that the Clinic gave "contradictory information." Doc. 27-3, p. 2. The Clinic responds that it did not understand the EEOC to have been asking about the same positions, and that the Clinic offered its only formal position letter to the EEOC in December 2018.

The On-Site Visit: The confusion didn't stop there. The EEOC said that the Clinic's legal counsel, Rhea Garrett, "failed to show up as scheduled" for an on-site visit. Doc. 27-3, p. 2. But the Clinic says that the EEOC's investigator, Iran Cruz, reached out to set up a visit and proposed April 23, 2019, but the Clinic never confirmed this date. The emails between Garrett and Cruz show that Garrett sent two emails to Cruz in the morning on April 23, 2019, one of which stated that Garrett would email some personnel documents to Cruz. "Then," Garrett said, "we can schedule an on site." Doc. 25-7, p. 8. Cruz arrived at the Clinic later that day, having believed that Garrett already agreed to the date. Because Garrett was not there, the Clinic's office manager denied Cruz access to any personnel files. Cruz then asked who the Clinic had hired in April/May 2018, and the office manager answered that the Clinic had hired Clowdus-Huntington at that time.

The EEOC determined that it had reasonable cause to believe the Clinic had discriminated against Keith based on her race. Keith filed this suit in November 2019.

**STANDARD OF REVIEW**

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Moreover, all evidence must be viewed and inferences drawn in the light most favorable to the nonmoving party. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**ANALYSIS**

Keith raises one claim: discrimination based on race. Below, the court discusses the standard for judging race discrimination claims (Part I), then applies it to Keith's claim (Part II).

**I.    Applicable Law**

Title VII prohibits an employer from discriminating against an employee based on race, among other protected classes. 42 U.S.C. § 2000e-2(a)(1). Section 1981 also prohibits intentional discrimination based on race in the employment

context. 42 U.S.C. § 1981(a); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). To survive summary judgment on these intentional discrimination claims, a plaintiff must present sufficient evidence to create a triable issue about the employer's discriminatory intent. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). In general, courts use the same framework to analyze employment discrimination claims under Title VII and § 1981. See *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). But while Keith can succeed on her Title VII claim by proving that her race was a "motivating factor" in the Clinic's decision not to hire her, her § 1981 claim requires more—to prevail under that statute, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Employers rarely discriminate openly, so courts have established a three-step, burden-shifting test for proving discrimination without direct evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must present a prima facie case to create a presumption of unlawful discrimination. Then, the defendant employer may rebut that presumption by producing evidence of a legitimate, nondiscriminatory reason for its employment action. *Id.* This burden is one of production, not persuasion. *Id.* If the defendant does articulate a legitimate

reason, the burden shifts back to the plaintiff to show that the employer's proffered reason was pretext for discrimination. *Id.*

1. <u>Prima facie case</u>: To make out a prima facie failure-to-hire case, the plaintiff must show: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside her protected class. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

2. <u>Nondiscriminatory reason</u>: If the employee establishes a prima facie case, the burden then shifts to the defendant employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003).

3. <u>Pretext</u>: If the employer gives a nondiscriminatory reason, the employee must then offer evidence showing that the employer's stated reason was pretextual. *Id.* If the employer offers multiple reasons, the employee must rebut each reason individually. *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). Significantly, the employee must prove "both that the reason was false and that discrimination was the real reason" that she was terminated. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). As the Eleventh Circuit has put it, the employee "must meet [the stated reason] head on and rebut it, and the employee

cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.

## II.   Application to Keith's Claim

The Clinic does not contest Keith's prima facie case in Step 1, and Keith does not dispute that the Clinic has presented a legitimate, nondiscriminatory reason for not hiring her in Step 2. That means this case is ultimately decided in the final step— *i.e.*, Keith's inability to prove pretext—so the court will not address the first two.

The Clinic provided three nondiscriminatory reasons that it did not hire Keith: (1) Keith did not have the interpersonal skills needed, (2) Keith's salary expectations were too high, and (3) Keith had less-relevant experience than Clowdus-Huntington, the candidate the Clinic did hire. To survive summary judgment, Keith must show that all three reasons were pretextual. Keith cannot do so for two reasons: she neither presents evidence that the Clinic's third proffered reason was false nor does she show that race—rather than some other reason, legitimate or illegitimate—motivated the Clinic's decision to not hire her.

1. <u>Experience gap</u>: McGinnis (the office manager) claimed that her concerns about Keith's experience was that the job mainly entailed receptionist duties and that Keith's background was better suited to a full-time CMA position. By contrast, Clowdus-Huntington (who got the job) had already worked at the Clinic, performing the same duties that the open position required.

To show pretext, Keith points out her own qualifications and argues that McGinnis changed the job description when Keith interviewed to dissuade her from applying. But, again, "quarreling with the wisdom" of the Clinic's belief that Clowdus-Huntington had better qualifications than Keith will not suffice to create a triable issue on pretext. *Chapman*, 229 F.3d at 1030. So Keith can only rebut this reason by showing that the Clinic did, in fact, alter the job description to avoid hiring her because of her race.

The court agrees with Keith that the position description that the Clinic posted more closely aligns with a CMA than a front desk receptionist. Doc. 25-1, p. 77. Yet Keith does not dispute that the Clinic ultimately hired Clowdus-Huntington to fill a receptionist role, not a CMA role. This fact suggests that the Clinic intended to hire a receptionist, not a CMA, even if the job description could have been clearer. And Keith has produced no other evidence that would allow a reasonable juror to conclude that the Clinic reoriented its entire application process to hire someone for a different role than what it needed solely to avoid hiring Keith because of her race.

Put another way, Keith's narrative would require assuming that the Clinic intentionally kept open a needed CMA position for months—while filling a receptionist position it did not intend to fill—just to avoid hiring a black woman. Then, the Clinic changed its mind about race when it hired a different black woman, Dalana Abercrombie, as its CMA. Keith offers no evidence that would allow a

reasonable juror to agree with this narrative. Viewed in this light, the "preponderance of the evidence" simply does not suggest that the Clinic lied about why it hired Clowdus-Huntington and not Keith. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 248 (1981).

2. <u>Evidence about race</u>: Even if this court were to find that the Clinic's explanations were false, Keith still presents no basis to conclude that race—and not some other characteristic—motivated the Clinic's decision. Keith's only evidence of racial discrimination is that McGinnis's demeanor changed when she realized Keith's race, but she cites no facts other than her own testimony to support this claim. Doc. 3, ¶ 10.

Instead, Keith points to the EEOC's statements that the Clinic offered contradictory information and refused to let the EEOC investigator inspect files during his on-site visit. But these facts—even if the court assumes they are true[2]— at best suggest that the Clinic had some improper or embarrassing reason not to hire Keith. Keith must do more than show the Clinic acted suspiciously; she must prove that the Clinic's reasons "were in fact a coverup for a *racially discriminatory decision.*" *McDonnell Douglas*, 411 U.S. at 805 (emphasis added). Assuming the

---

[2] EEOC findings are not binding on this court. *Moore v. Devine*, 767 F.2d 1541, 1550–51 (11th Cir.1985), *modified on reh'g*, 780 F.2d 1559, 1560 (11th Cir.1986). As stated previously, the EEOC's conclusion that the Clinic gave contradictory responses is most likely based on a miscommunication between the parties. So this fact would not carry Keith far anyway.

Clinic did try to cover up its true motivations for not wanting to hire Keith, those motivations could be any number of things other than race.

Again, the Clinic ultimately hired Abercrombie, a black woman, for the CMA vacancy that Keith believed she was interviewing for. Keith suggests that the Clinic only hired Abercrombie after Keith filed her EEOC charge to "further hide its racial discriminatory animus." Doc. 28, p. 9. But Keith makes this assertion with no factual basis to support it; it is little more than "a guess or possibility." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). So the court cannot infer in Keith's favor on this point.

## CONCLUSION

For the reasons stated above, the Clinic's motion for summary judgment (doc. 24) is due to be **GRANTED**. So the court will enter a separate order granting the motion and dismissing this case with prejudice.

**DONE** on August 25, 2021.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE